# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

PRIMERICA LIFE INSURANCE
COMPANY,

        Plaintiff,

v.                                                                                          Case No. 5:23-cv-518-JA-PRL

RASHAWN THOMPSON, J.P.,
D.P., O.J., NEVILLE GRAHAM,
RICHARD GRAHAM, and
DONOVAN PASMORE,

        Defendants.
_____

## ORDER

This case is before the Court on Plaintiff Primerica Life Insurance Company's motion to interplead policy benefits into the Registry of the Court, to dismiss Primerica as a party to this case, and to enjoin Defendants from instituting any action or proceeding against Primerica in relation to the policy benefits. (Doc. 24). For the reasons that follow, the motion will be granted in part and denied in part.

I.    BACKGROUND[1]

Jessica Johnson-Pasmore died in an Alachua County, Florida hospital on June 21, 2022, leaving behind Donovan Pasmore (her former husband), J.P. and

---

[1] The Court derives the facts from the amended complaint (Doc. 22).

D.P. (their children), and Rashawn Thompson and O.J. (Jessica's other children). (Doc. 22 ¶¶ 2–5, 8, 15, 17). This case concerns two life insurance policies: Jessica's July 2019 policy (policy number ending in 2084), which had a death benefit of $96,000.00, and Jessica and Donovan's August 2020 policy (policy number ending in 3112), which had a benefit of $27,500.00. (*Id.* ¶¶ 12, 14, 18, 24, 26, 33). Neville and Richard Graham maintain that they are entitled to the policies' benefits, with Neville claiming to be Jessica's father. (*Id.* ¶¶ 19–20, 29–31, 34).

For the July 2019 policy, Jessica initially designated "all children equally" as the primary beneficiaries. (*Id.* ¶ 13). However, on June 20, 2022, Primerica received a Multipurpose Change Form that Jessica purportedly signed on June 12, 2022—six days after she was admitted to the hospital. (*Id.* ¶¶ 15–16). Under the Multipurpose Change Form, Neville and Richard are the policy's primary beneficiaries. (*Id.* ¶ 16). Primerica is uncertain as to whether Jessica signed the form and, if she did, whether she was competent to change beneficiaries. (*Id.* ¶ 21). In Primerica's view, if she signed the form and was competent, Neville and Richard are likely entitled to the policy's benefit, but if she did not sign or was not competent, her children—J.P., D.P., O.J., and Rashawn—are entitled to the benefit. (*Id.* ¶¶ 22–23).

The August 2020 policy was initially issued to Donovan as the owner. (*Id.* ¶ 26). But on November 29, 2021, Donovan purportedly transferred ownership

2

to Jessica. (*Id.* ¶ 27). On February 1, 2022, Jessica designated "all children" equally as the primary beneficiaries. (*Id.* ¶ 28). Then, on May 24, 2022, Jessica purportedly transferred ownership of the policy to Neville through a Policy Change Application. (*Id.* ¶ 29). And on June 22, 2022, Primerica received a Multipurpose Change Form that Neville purportedly signed on June 12 designating himself and Richard as the primary beneficiaries of Jessica's insurance coverage. (*Id.* ¶ 34). Primerica is uncertain as to whether Jessica was competent to transfer ownership in May 2022. (*Id.* ¶ 35). Moreover, Donovan disputes that he transferred ownership in November 2021. (*Id.* ¶ 37; Doc. 26-1 at 2–4). Primerica asserts that if Donovan did not sign the form transferring ownership, the policy's benefit may be payable to him; if he transferred ownership to Jessica and she was not competent to transfer ownership to Neville, the benefit is payable to her children; and if she was competent, the benefit is likely payable to Neville and Richard. (Doc. 22 ¶¶ 34, 36, 38).

Given the competing claims of entitlement to the policies' benefits by Jessica's children on the one hand and Neville and Richard on the other, Primerica filed a complaint for interpleader on August 15, 2023. (*See* Doc. 1). Although 28 U.S.C. § 1335 gives district courts original jurisdiction over interpleader cases under certain conditions, the complaint based jurisdiction on the diversity of citizenship between Primerica (a citizen of Tennessee and Georgia) and Defendants (all Florida citizens) under 28 U.S.C. § 1332, (Doc. 1

3

¶¶ 1–9), and sought interpleader under Federal Rule of Civil Procedure 22, (Doc. 1 at 1). Two months into the case, on Primerica's motion, the Court stayed the case for ninety days so guardians could be appointed for the minor defendants and the parties could attempt to settle. (*See* Docs. 17 & 18). Because guardians had not been appointed by the end of the ninety days, the Court lifted the stay on Primerica's motion. (*See* Docs. 19, 20, & 21). Primerica then amended its complaint to add Donovan as a defendant and to allege his dispute over the November 2021 transfer of ownership of the August 2020 policy. (*Compare* Doc. 1, *with* Doc. 22). While the instant motion was pending, Donovan sent a document to Primerica in which he stated his "[r]equest and [h]ope" that J.P., D.P., O.J., and Rashawn "split equally the beneficiary benefits of both policies." (Doc. 26-1 at 6). The issue thus seems to be whether Jessica's children benefit from her policies or Neville and Richard do.

## II. DISCUSSION

Through interpleader, "an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, avoids multiple liability by asking the court to determine the asset's rightful owner." *Chase Manhattan Bank v. Mandalay Shores Coop. Hous. Ass'n*, 21 F.3d 380, 383 (11th Cir. 1994). Thus, "[a] successful interpleader suit results in the entry of a discharge judgment on behalf of the stakeholder; once the stakeholder turns the asset over to the registry of the court, all legal obligations to the asset's

4

claimants are satisfied." *Id.* "[T]he burden is on the party seeking interpleader to demonstrate that [it] is entitled to" interpleader—that is, that it "has been or may be subjected to adverse claims." *Dunbar v. United States*, 502 F.2d 506, 511 (5th Cir. 1974).

An "[i]nterpleader action proceeds in two stages. At the first stage, the court determines whether interpleader is proper and 'whether to discharge the stakeholder from further liability to the claimants.' At the second stage, the court evaluates 'the respective rights of the claimants to the interpleaded funds.'" *Ohio Nat'l Life Assurance Corp. v. Langkau*, 353 F. App'x 244, 248 (11th Cir. 2009) (citations omitted) (quoting *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009)). This case is at the first stage, during which "the district court decides whether the requirements for a rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund." *Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L.*, 699 F. Supp. 2d 1344, 1349 (S.D. Fla. 2010) (footnotes omitted). At this stage, the district court "may also determine if the stakeholder is disinterested . . . and, if so, [may] discharge it from liability and dismiss it from the action." *Id.*

Primerica seeks interpleader under Rule 22, (Doc. 22 at 1), which provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ.

5

P. 22(a)(1). Primerica asserts that Defendants' "adverse and conflicting claims" about who is entitled to the benefits of the two policies may expose Primerica to multiple liability because "each of the [p]olicy [b]enefits is a single fund." (Doc. 24 at 7). Primerica also claims to be a disinterested stakeholder with no beneficial interest in the policy benefits. (*Id.*). Having no reason to doubt Primerica's assertions, the Court finds that interpleader is proper. The Court will accept the policy benefits into the Registry, discharge Primerica from liability, and dismiss Primerica from this case. *See Orseck*, 699 F. Supp. 2d at 1349 ("Th[e] practice [of dismissing the interpleading stakeholder] is particularly common in cases involving competing claims to life insurance proceeds where the interpleading insurers—as disinterested stakeholders—deposit the res into the court's registry and request immediate dismissal from the action . . . .").

Primerica asks the Court to enjoin Defendants from instituting any action or proceeding against Primerica in relation to the policy benefits, but it does not develop much argument on this issue and fails to explain what would authorize the Court to enjoin Defendants. (*See* Doc. 24 at 7–8). Under 28 U.S.C. § 2361, "a district court may . . . restrain[] [claimants] from instituting or prosecuting any proceeding in any [s]tate or United States court affecting the property, instrument[,] or obligation involved in the interpleader action until further order of the court." But 28 U.S.C. § 2361 is limited to cases brought under 28

U.S.C. § 1335. *See Bos. Old Colony Ins. Co. v. Balbin*, 591 F.2d 1040, 1042 n.5 (5th Cir. 1979) ("28 U.S.C. § 2361 expressly refers to § 1335 and does not mention either the diversity statute or Rule 22."). Primerica satisfies diversity jurisdiction but does not satisfy 28 U.S.C. § 1335(a)(1), which requires "[t]wo or more adverse claimants" to be "of diverse citizenship." *See Maraist v. Coates*, No. 22-11412, 2023 U.S. App. LEXIS 33075, at *23–24 (11th Cir. Dec. 14, 2023) (citing *Litton Indus. Automation Sys. v. Nationwide Power Corp.*, 106 F.3d 366, 368 (11th Cir. 1997)) ("[Section] 1335 requires diversity among at least two of the defendants in the interpleader action[.]"). As alleged in this case, all Defendants are Florida citizens. (Doc. 22 ¶¶ 2–8). Thus, § 2361 does not authorize the Court to enjoin Defendants.

The Court may have authority to enjoin Defendants under 28 U.S.C. § 2283, which provides that "[a] court of the United States may not grant an injunction to stay proceedings in a [s]tate court except as expressly authorized by [an a]ct of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." But an injunction issued pursuant to 28 U.S.C. § 2283 must satisfy the requirements of Federal Rule of Civil Procedure 65. *See Gen. Ry. Signal Co. v. Corcoran*, 921 F.2d 700, 707 (7th Cir. 1991). And Primerica does not establish that those requirements are met or that the requested injunction is necessary. (*See* Doc. 24). *See Harris Corp. v. Dunn*, No. 6:05-cv-1388-Orl-19DAB, 2006 U.S. Dist. LEXIS 71073, at *13 (M.D. Fla. Aug.

25, 2006) ("Absent a showing of need and compliance with Rule 65, it is recommended that the Court decline injunctive relief at this time, without prejudice to reconsideration, if appropriate . . . ."), *report and recommendation adopted and confirmed by and made a part of* 2006 U.S. Dist. LEXIS 67127 (M.D. Fla. Sept. 18, 2006). Thus, Primerica's request for injunctive relief will be denied without prejudice to reconsideration, if appropriate.

## III. CONCLUSION

Accordingly, it is **ORDERED** that Primerica's motion (Doc. 24) is **GRANTED in part and DENIED in part** as follows:

1. The request for interpleader is **granted**. **No later than March 11, 2024**, Primerica shall deposit the benefits for policy numbers ending in 2084 and 3112 into the Registry of the Court. Upon deposit of the benefits into the Registry, Primerica is discharged from liability as to the policy benefits and **dismissed with prejudice** as a party to this case. The caption of this case shall be re-styled as "In re Benefits for Primerica Policy Numbers Ending in 2084 and 3112," and Defendants shall be referred to as "Claimants."

2. The request for injunctive relief is **denied without prejudice** to reconsideration, if appropriate.

**DONE and ORDERED** on March 4th, 2024.

                                        JOHN ANTOON II
                                        United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties